
1 Winnisimmet Street  
Chelsea, MA 02150

617.497.7200 p  
866.257.9530 f

slglawfirm.com

May 11, 2021

**VIA CM/ECF**

Magistrate Judge Steven L. Tiscione
United States District Court, Eastern District of New York
Long Island Courthouse
100 Federal Plaza, Courtroom 840
Central Islip, NY 11722

Re: *Edward Murphy v. Commonwealth Land Title Insurance Company, et al.*, 2:20-cv-02793- GRB-ST

Dear Judge Tiscione:

    This firm represents Plaintiff Edward Murphy in the above-referenced action, which is set for a settlement conference on June 8, 2021 at 10:00 a.m. EDT. The parties have been negotiating Phase I discovery for weeks and have reached an impasse on two categories of documents that Mr. Murphy seeks from the Defendants. First, Mr. Murphy seeks a copy of a claims file from 2010 concerning another of Defendants' insureds who had an adverse claim to title to the property that is the subject of this dispute. Second, Mr. Murphy has asked for any policies or manuals that Defendants have addressing how they identify or avoid conflicts of interest.

    These requests are centrally relevant to Mr. Murphy's live claim for breach of fiduciary duty and are proportional to a limited scope of discovery for settlement purposes. Mr. Murphy has alleged that in 2007, unbeknownst to him, Washington Mutual Bank ("WaMu") obtain a foreclosure judgment against him. Mr. Murphy contested the judgment in a traverse hearing in the New York Supreme Court, in which Mr. Luciano participated claiming to be a *bona fide* purchaser then in possession of the property. *Washington Mutual Bank v. Murphy, et al.*, Index No. 15811/07, 2010 NY Slip Op 33720(U) (Sup. Ct. 2010). Mr. Murphy's request for relief from the foreclosure judgment was denied. However, the Appellate Division Second Department later held that the foreclosure judgment was obtained without proper notice to Mr. Murphy, rendering it null and void *ab initio*. *Washington Mutual Bank v. Murphy, et al.*, Index No. 2012-03036, 2015 NY Slip Op 03520 (2d Dept. 2015). Mr. Murphy then initiated an action against JP Morgan Chase Bank, which had acquired the property at a foreclosure sale, evicted Mr. Murphy, and sold the property to Mr. Luciano for a song, all without notice to Mr. Murphy. At all times throughout the traverse hearing and Mr. Murphy's subsequent action, Mr. Luciano was insured by Fidelity National Title Insurance Company ("FNTIC"), a wholly-owned subsidiary of Defendant Fidelity National Finance, Inc. ("FNF"). Defendant Commonwealth Land Title Insurance Company, which is also a wholly-owned subsidiary of FNF insured Mr. Murphy's title, but refused to provide coverage to him in his efforts to recover possession of the property or effectuate the restoration of his title to the property.

Magistrate Judge Steven L. Tiscione
United States District Court, Eastern District of New York

May 11, 2021

In the present action, Mr. Murphy has live claims for breach of fiduciary duty and violation of General Business Law § 349. Commonwealth prevailed on a motion to dismiss, arguing that Mr. Murphy's claim for coverage was properly denied because his claim arose "post-policy" and was subject to an applicable exclusion. Part of Mr. Murphy's fiduciary duty and GBL § 349 theory is that Commonwealth and FNF engaged in a conflict of interest by choosing to cover Mr. Luciano while declining to cover Mr. Murphy in claims in which they were adverse. *See* Complaint ¶ 85. In his briefing on Defendants' Motion to Dismiss, Mr. Murphy stated that, "Commonwealth frustrated Mr. Murphy's ability to receive the benefit of the Policy because not only did Commonwealth deny coverage to Mr. Murphy, it actively opposed Mr. Murphy from seeking relief. Additionally, Mr. Murphy has alleged that Commonwealth placed its own pecuniary interest ahead of Mr. Murphy's . . . ." ECF No. 11, at 4. This is the conflict of interest that Mr. Murphy has alleged. In addition, in light of Commonwealth's argument that Mr. Murphy's claim for coverage was properly denied "post-policy," Mr. Murphy's theory is that the same conclusion should have resulted for Mr. Luciano's claim to coverage. Mr. Luciano took out his policy in 2009, and Mr. Murphy's claim vis-à-vis Mr. Luciano arose in 2010, post-policy. Thus, Mr. Murphy seeks to discover how Mr. Luciano was afforded coverage while Mr. Murphy was not afforded coverage when both insureds' claims would have arisen "post-policy," in the affiliated insurers' view.

"It is well established that, as between an insurer and its assured, a fiduciary relationship does exist, requiring utmost good faith by the carrier in its dealings with its insured." *Hartford Accident & Indemnity Co. v. Michigan Mutual Insurance Co.*, 93 A.D.2d 337, 340–41 (1st Dept. 1983). It is also "fundamental that a fiduciary duty 'is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary but results from the relation.'" *Ne. Gen. Corp. v. Wellington Advert., Inc.*, 82 N.Y.2d 158, 172 (Ct. App. 1993); *see also Litton Indus., Inc. v. Lehman Brothers Kuhn Loeb Inc.*, 767 F. Supp. 1220, 1231 (S.D.N.Y. 1991) (The "existence of a fiduciary duty is not coterminous with a contractual obligation . . . [and] under New York law cannot be determined by recourse to rigid formulas."). A comparison of Commonwealth's and FNTIC's analyses of why Mr. Luciano was entitled to coverage, but Mr. Murphy was not, is centrally relevant to whether the insurers – which are affiliates – were engaged in a conflict of interest or were seeking to protect their own pecuniary interests. Similarly, whether Commonwealth, FNF, or FNTIC (whose documents are accessible to and under the control of FNF for discovery purposes) have any policies or guidelines about how to address conflicts of interest or situations in which one of the entities insures a party with a claim adverse to another of its or its affiliates' insureds.

Defendants' arguments against production are misplaced. First, Defendants make no argument that the production would be burdensome or outside of an appropriate Phase I scope. During conference, Defendants made no argument against production of the 2010 claim file other than relevance. Defendants apparently now argue, for the first time, that production of the 2010 claims file would somehow inform Mr. Murphy of Mr. Luciano's strategy and defenses in the foreclose action, which is long over and was reversed in any event. There is no claim pending against Mr. Luciano or any way in which such information could be used to his detriment. As to the guidelines or policies, Defendants argue that they are proprietary and that whether something is a "conflict of interest" is a legal conclusion. Mr. Murphy is not engaged in any competitive business against the Defendants, and the Court has entered a confidentiality stipulation that would protect any alleged proprietary information in any such guidelines or

Magistrate Judge Steven L. Tiscione
United States District Court, Eastern District of New York

May 11, 2021

policies. In conference, Mr. Murphy supplied keywords and other explanations to help Defendants identify responsive documents. They seem to know what documents would be responsive, but refuse to provide them for no good reason. Of course, whether Defendants abided their own policies or guidelines as to how to address situations where they or their affiliates are extending coverage to insureds that are adverse to each other is centrally relevant to Mr. Murphy's claims and conflict of interest theory.

Mr. Murphy anticipates that Defendants refuse to supply this information so that at the settlement conference or later they can argue that there is no evidence of any conflict of interest. They should not be permitted to withhold that evidence and then claim that there is none. Mr. Murphy respectfully requests that Defendants be ordered to produce Mr. Luciano's 2010 claims file and any policies or guidelines addressing how to deal with situations in which their insureds are adverse to each other.

Mr. Murphy seeks to minimize further briefing or letter-writing on discovery topics. Defendants' letter of May 10th asks that Mr. Murphy be ordered to produce:

> documents (1) the 2016 Action Settlement, including the Settlement Agreement, drafts of that Agreement and documents concerning, itemizing or calculating Murphy's damage claims in that action; (2) monies paid to Murphy in connection with the Foreclosure Action; (3) payments made by Murphy to the Lender from the inception of the Foreclosure Action; (4) supporting and/or calculating Murphy's claim that he incurred actual and consequential damages as a result of Defendants' alleged conduct.

Mr. Murphy has already informed Defendants' counsel that he will produce all documents that he has relating to his damages and that he will endeavor to supplement his Initial Disclosures to the best of his ability absent expert testimony. No monies were paid to Mr. Murphy in connection with the foreclosure action, which Defendants could easily have ascertained through conference had they asked (they did not). Mr. Murphy made no payments to his lender "from the inception of the Foreclosure Action," which Defendants also could easily have ascertained through conference, had they asked. Mr. Murphy will produce any settlement agreement and drafts thereof, and is already engaged with the parties to that agreement to address any confidentiality and notice requirements. It is unclear exactly what is meant by "documents concerning, itemizing or calculating Murphy's damage claims" in the 2016 action, but Mr. Murphy will produce any non-privileged documents that reflect the damages claimed in that action.

Thank you for Your Honor's attention to this matter.

Sincerely,

Colin R. Hagan

cc: Joyce Davis, Esq.

*Magistrate Judge Steven L. Tiscione 05 11 21*